UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **CHRISTOPHER M. POGUE** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:22-cv-0450-HAB-SLC |
| | ) |
| **MONEY FLOW INCORPORATED** | ) |
| d/b/a **THE ROCK, DONNA ROCKEY,** and | ) |
| **MESA UNDERWRITERS SPECIALTY** | ) |
| **INSURANCE COMPANY** | ) |
| | ) |
| Defendants, | ) |
| | ) |
| | ) |

**OPINION AND ORDER**

This matter comes before the Court by way of an unfortunate circumstance in which Plaintiff was shot while visiting a bar owned and operated by Defendant Money Flow Incorporated d/b/a The Rock ("The Rock") and Donna Rockey ("Rockey"). Defendant MESA Underwriters Specialty Insurance Company ("MUSIC") is the insurer for The Rock and Rockey under a Commercial General Liability ("CGL") Policy. MUSIC has moved to dismiss the case arguing that no coverage exists for Plaintiff's injuries and thus it has no duty to defend The Rock or Rockey. (ECF No. 11). Both Plaintiff and the insureds, The Rock and Rockey, opposed MUSIC's motion. (ECF Nos. 17-18). That motion is now fully briefed (ECF Nos. 11, 17-18, 21-22) and ripe for ruling. For the reasons below, MUSIC's Motion to Dismiss will be GRANTED.

**I.     Well-Pleaded Facts**

In line with the standard of review, the Court will take these facts as stated in Plaintiff's Complaint as true. The Rock is a bar located in Fort Wayne, Indiana, owned by Rockey. (ECF No.

1

11-2 at ¶ 5). On August 24, 2018, Plaintiff Christopher Pogue ("Pogue") and Aaron Suggs ("Suggs") were patrons of The Rock. (*Id.* at ¶ 12-13). When Pogue arrived, he entered the "Smoking Garden" area just outside The Rock while Suggs was already in the interior of the premises. (*Id.*). The Smoking Garden is surrounded by an 8-foot-tall wooden fence with a gate entrance to the parking lot and provides access to the bar through a single back door. (ECF No. 3 at ¶ 16).

Suggs, at some point, became threatening and verbally abusive to patrons and was asked to leave by The Rock's bartender, April Fink ("Fink"). (ECF No. 11-2 at ¶ 14). Rather than leave, Suggs went to the Smoking Garden where Pogue and others with whom Suggs was previously arguing were located. (*Id.* at ¶ 17). There, he continued to be verbally abusive to the other patrons. (*Id.* at ¶ 17-18).

Suggs left The Rock only to return 20 to 30 minutes later with a handgun which he brandished upon arrival in front of Howard Johnson III ("Johnson"), another employee responsible for security. (*Id.* at ¶ 18-19). Suggs continued through the gate entrance from the parking lot into the Smoking Garden where he shot Pogue multiple times. (ECF No. 3 at ¶ 26). After this shooting, Suggs went back to his vehicle to reload his firearm. (*Id.* at ¶ 29). Noticing Suggs on the security cameras, Fink ordered Robert Karns ("Karns"), a fellow The Rock employee, to lock the back door from the Smoking Garden to the interior of The Rock. (*Id.* at ¶ 28). This left Pogue between The Rock and a hard place; Suggs returned to the Smoking Garden and shot Pogue several more times. (*Id.* at ¶ 31).

In Pogue's Complaint, he alleges causes of action against The Rock and Rockey for their direct negligence as well as vicarious liability for the negligence of their employees Fink, Johnson and Karns. (*Id.* at ¶ 44). Pogue makes many allegations including that The Rock and Rockey or

2

their employees were negligent in falsely imprisoning Pogue after he was shot the first time in addition to negligence in allowing the shooting in the first place. (*Id.* at ¶ 33). MUSIC was also named a defendant by virtue of their CGL policy ("the Policy") issued for The Rock and Rockey (collectively hereafter "the insureds") covering the period in which the shooting occurred.

Pogue filed a third-party declaratory judgment action asking the Court to determine whether MUSIC must defend and indemnify the insureds for the August 2018 shooting. (*Id.*). MUSIC timely removed the action pursuant to 28 U.S.C § 1332(a) under diversity of citizenship. (ECF No. 1). MUSIC moved to dismiss Pogue's Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

    a. **The Policy**

MUSIC contends that there is no coverage under the CGL Policy for the shooting because the Policy contains a Lethal Weapons Exclusion—which excludes coverage for injuries resulting from the use of lethal weapons. (ECF No. 11-1). In response, the insureds argue that because Pogue's Complaint contains both covered and non-covered claims, MUSIC must defend them against all of Pogue's claims. (ECF No. 17). They contend Pogue's claim for false imprisonment—for which they argue coverage exists—is distinct from the shooting itself and triggers MUSIC's duty to defend. (*Id.*). Pogue, on the other hand, argues that the Lethal Weapons Exclusion conflicts with the Limited Assault or Battery Coverage rendering the Policy ambiguous. (ECF No. 18). These determinations are impossible to make without analyzing the Policy language itself.

The Policy provides a broad grant of coverage for any suit seeking damages for "bodily injury"[1] and "personal and advertising injury"[2]:

---

[1] The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (ECF No. 3 at 46).
[2] The policy defines "personal and advertising injury" as "injury, including any consequential 'bodily injury', arising out of one or more or any of the following offenses: a. false arrest, detention, or imprisonment…" (ECF No. 3 at 46).

3

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM SECTION I – COVERAGES
>
> COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> ***
>
> COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(ECF No. 3-1 at 35, 40). The scope of coverage is narrowed through an exclusion for lethal weapons embodied in the Policy:

> EXCLUSION – LETHAL WEAPONS
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM SECTION I – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. EXCLUSIONS are amended and the following added:
>
> USE OF WEAPONS
>
> This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of or resulting from the possession, ownership, maintenance, use of or threatened use of a lethal weapon, including but not limited

to firearms by any person.

(*Id.* at 14). The Policy also contains a Limited Assault or Battery Coverage Provision which, as the name suggests, provides a lesser amount of coverage for assaults and batteries which may occur on the premises:

> I.   LIMITED ASSAULT OR BATTERY COVERAGE
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>
> We will pay up to the limits shown in the Schedule for damages, including medical payments under Coverage C, that the insured becomes legally obligated to pay because of "bodily injury", "property damage" or "personal and advertising injury" directly caused by an "assault" or "battery" when that "assault" or "battery" is caused by:
>
> A. The direct or indirect instigation, instruction, direction, negligence, or involvement of you, your employees, patrons or any other persons, or
> B. The failure to provide a safe environment, including but not limited to the failure to provide adequate security, or to warn of the dangers of the environment, or
> C. The negligent employment, investigation, supervision, hiring, training or retention of any person, or
> D. Negligent or reckless, or wanton conduct by you, your employees, patrons or any other persons, or
> E. The failure to render or secure medical treatment or care necessitated by any "assault" or "battery".
>
> Unless specifically modified or deleted in this endorsement, the terms, conditions, limitations and exclusions of the Commercial General Liability Coverage Part to which this endorsement is attached remain effective and apply to Limited Assault or Battery Coverage provided herein.

(*Id.* at 22).

## II.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. MUSIC seeks dismissal pursuant to Rule 12(b)(6) because MUSIC is involved in the lawsuit solely because of

5

the insureds' CGL Policy. If there is no coverage, then no claim exists against MUSIC.

This Court may dismiss a complaint relating to the availability of coverage under an insurance agreement based on the policy's plain meaning. *See Sandy Point Dental, PC v. Cincinnati Ins. Co.,* 20 F.4th 327 (7th Cir. 2021), rehearing denied No. 21-1203, 2022 WL 126708 (7th Cir. Jan. 13, 2022) (affirming the lower court's grant of a motion to dismiss for a breach of contract claim based on the plain language of a policy and the determination that no coverage could exist as a matter of law). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations and internal quotation marks omitted); *see also Ray v. City of Chi.*, 629 F.3d 660, 662-63 (7th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When analyzing a motion to dismiss a claim under Rule 12(b)(6), the factual allegations in the complaint must be accepted as true and viewed in the light most favorable to the plaintiff. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1006 (7th Cir. 2000). That said, the Court is not "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Bielanski v. Cty. Of Kane,* 550 F.3d 632 Cir. 2008).

### III. Discussion

In its Motion to Dismiss, MUSIC asserts that there is no coverage under the Policy for the loss suffered by Pogue as a matter of law and thus the complaint must be dismissed. MUSIC relies on the Policy's Lethal Weapons Exclusion as a complete bar to coverage for any injury arising from the shooting. It claims that based on the allegations in the underlying lawsuit, the exclusion clearly supports its denial of coverage and dismissal of the present controversy.

The insureds and Pogue contend otherwise. The insureds argue that Pogue's complaint contains claims, some of which fall within the scope of coverage and others which are barred by the exclusion. They believe that the claim for false imprisonment is covered and therefore MUSIC has a duty to defend the entirety of Pogue's cause of action. *See Hurst-Rosche Eng'rs v. Com. Union Ins. Co.,* 51 F.3d 1336, 1342 (7th Cir. 1995) ("If any one claim potentially falls within the scope of coverage, the insurer must provide a defense"). Pogue takes a different approach. He seeks to have the Policy declared ambiguous because the Lethal Weapons Exclusions and the Limited Assault or Battery Coverage Provisions are at odds. *See Meridian Mut. Ins. Co. v. Auto-Owners Ins. Co.,* 698 N.E.2d 770 (Ind. 1998) ("Ambiguous provisions in insurance policies are construed in favor of the insured.").

Because the Court sits in diversity, the Court must apply Indiana law for contract interpretation. *Allstate Ins. Co. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2004) ("A federal court sitting in diversity has the obligation to apply the law of the state as it believes the highest court of the state would apply it if presented with the issue."). Under Indiana law, an insurance contract is subject to the same rules of interpretation as any other contract. *Indiana Funeral Directors Ins. Trust v. Trustmark Ins. Corp.,* 347 F.3d 652, 654 (7th Cir. 2003). As with other contracts, interpretation of an insurance policy presents a question of law to be determined by the Court. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994) (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind.1992)).

As applied to these facts, there is no coverage under the Policy for Pogue's injuries resulting from the use of a lethal weapon. The Policy clearly and unambiguously excludes coverage for bodily injury or personal injury caused by any person's use of a firearm. All Pogue's claims and injuries necessarily stem from Suggs' use of a gun taking them outside the Policy's

scope. The Court addresses each of the parties' arguments below, disposing of Pogue's and the insureds' claims in turn.

MUSIC hangs its hat on the plain meaning rule. If the Policy is "clear and unambiguous, it should be given its plain and ordinary meaning." *Eli Lilly & Co. v. Homes Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). "Where the contract is plain and its meaning clear, the court will not change its evident meaning, by rules of construction, and thereby make a new contract for the parties." *Caliber One Indem. Co. v. O & M Const. Co.*, No. 1:04-CV-00417-LJM-VS, 2004 WL 2538646, at *3 (S.D. Ind. Sept. 29, 2004) (citing *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 669 (Ind. 1997)). "[I]f no ambiguity exists, the policy will not be interpreted to provide greater coverage than the parties bargained for." *Id.* (citing *Huntzinger v. Hastings Mut. Ins. Co.,* 143 F.3d 302, 309 (7th Cir. 1998)); *See also Earl v. Am. States Preferred Ins. Co.,* 744 N.E.2d 1025, 1027 (Ind. Ct. App. 2001). This holds true even where the plain meaning of the Policy would "result[] in a limitation of the insurer's liability." *Eli Lilly,* 482 N.E.2d at 470.

The Policy is clear. It covers the "sum that the insured becomes legally obligated to pay as damages because of 'bodily injury'" or "personal and advertising injury to which this insurance applies." (ECF No. 3-1 at 35,40). But the Lethal Weapons Exclusion plainly states that "[t]his insurance does not apply to 'bodily injury…' or 'personal and advertising injury' arising out of or resulting from…the use of a lethal weapon including but not limited to firearms by any person." (*Id.* at 14). The underlying complaint alleges that Suggs returned to The Rock after being asked to leave, shot Pogue multiple times with a firearm, went to his car to reload, and returned a second time to shoot Pogue again. (ECF No. 11-2). Pogue claims no damages outside of those resulting from the use of Suggs' firearm. (*Id.).* MUSIC can limit the coverage in their policies and the Lethal Weapons Exclusion is a clear limitation on just the type of injury Pogue suffered. *See W. Bend*

*Mut. v. Keaton*, 755 N.E.2d 652, 654 (Ind. Ct. App. 2001) ("[I]nsurers are free to limit the coverage of their policies, [but] such limitations are enforceable only if clearly expressed.")

The insureds seek to bob and weave their way around this clear exclusion by trying to find coverage for some portion of Pogue's claims. Among Pogue's allegations, he alleges that the insureds falsely imprisoned him by locking the door between The Rock and the Smoking Garden, leaving Pogue "without reasonable means of escape from the premises." (ECF No. 11-2 at ¶ 23). The insureds contend that this false imprisonment claim is covered under the Policy's plain meaning. (ECF No. 17 at 5). Accordingly, they view the false imprisonment claim as separate and distinct from the shooting itself such that coverage exists. This Court cannot reason its way to the same conclusion.

The insureds offer two approaches[3] to resolve whether Pogue's false imprisonment claim is barred by the Lethal Weapons Exclusion. Even if the Court were to apply either approach, the insureds fail to address a gaping hole in their argument—The Lethal Weapons Exclusion clearly excludes Pogue's claims for false imprisonment too. The Policy does not apply to "personal and advertising injury" arising out of the use or threatened use of a firearm. (ECF No. 3-1 at 14). Personal and advertising injury is defined in the Policy as "injury, including consequential 'bodily injury', arising out of… false arrest, detention or imprisonment." (*Id.* at 46). Rather than requiring the Court to consider whether the Lethal Weapons Exclusion bars a covered claim, the exclusion directly bars claims for injuries arising out of false imprisonment where it resulted from the use of a firearm. That is precisely the case here.

---

[3] The first considers "the overall intentional plan" of the tortfeasor-insured in determining whether an exclusion bars other covered claims. *See Auto-Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 699 (Minn. 1996). The second considers whether the claims are "inextricably linked" such that the false imprisonment claims are merely restated versions of Pogue's claims for negligence. *See State Farm Ins. Co. v. Bruns*, 942 A.2d 1275, 1283 (N.H. 2008); *See also Bohrer v. Church Mut. Ins. Co.*, 965 P.2d 1258, 1261-63 (Colo. 1998).

Even with this clear language, the insureds argue that the plaintiff's claims for false imprisonment are "separate and distinct from the negligence claims that resulted from the use of a firearm." (ECF No. 17 at 6). They advance three justifications. First, because Suggs committed the shooting and the insureds committed the false imprisonment, the claims for each act are separate. (*Id.*) Second, because the insureds did not plan to harm Pogue and Suggs did, the shooting is distinct from the false imprisonment. *See Auto-Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 699 (Minn. 1996) (holding that courts should look to the "overall intentional plan of the insured" to determine whether a false imprisonment claim was excluded from coverage under an intentional bodily harm exclusion of a homeowner's insurance policy). Finally, the insureds argue that the false imprisonment claim is not inextricably linked with the shooting itself. *See State Farm Ins. Co. v. Bruns*, 942 A.2d 1275, 1283 (N.H. 2008) ("Where the facts reveal that potentially covered acts are inextricably intertwined with and dependent upon the commission of uncovered acts, an insurer will not be required to defend.")

These justifications are easily disposed of by simply analyzing the doctrine of false imprisonment. Under Indiana law, "[f]alse imprisonment requires an unlawful restraint of one's freedom of movement against his will." *Delk v. Bd. of Comm'rs*, 503 N.E.2d 436, 439 (Ind. Ct. App. 2001). "False imprisonment may be committed by words alone, or by acts alone, or by both and by merely operating on the will of the individual, or by personal violence, or both." *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 967 (Ind. Ct. App. 2001).

Simply put, without Suggs' use—or at least threatened use—of a firearm there is no claim for false imprisonment here. Indeed, in Suggs' absence, Pogue would not have been restrained at all and he could have merely exited through the exterior gate of the Smoking Garden. It was only through the combination of Suggs's use of a lethal weapon and The Rock employees' decision to

lock the door that Pogue can claim he was imprisoned. Not to mention, any imprisonment occurred after and because Pogue was shot the first time. The false imprisonment claims and any damages[4] Pogue suffered completely depend on Suggs' use of a gun.

No matter what mental or grammatical acrobatics[5] the insureds attempt to perform, any claim for false imprisonment arises from Suggs' use of a firearm which takes it outside the scope of coverage under the Lethal Weapons Exclusion. Where there is no coverage, MUSIC has no duty to defend. *See Flanders* 40 F.3d at 150 ("If the underlying factual basis of a claim, even if proved true, would not result in liability under an insurance policy, the insurer may properly refuse to defend its insured."). Here, there is no coverage pursuant to the Policy's plain meaning.

Lastly, Pogue attempts to employ a contract law classic to find coverage under the Policy; he takes the stance that the insurance policy is ambiguous. Pogue contends that "[i]t is impossible to harmonize" the Lethal Weapons Exclusion with the Limited Assault or Battery Coverage Provision. (ECF No. 18 at 9). Contrary to that assertion, it is quite easy for this Court to find harmony amongst the two clauses.

---

[4] MUSIC, in response, points out that the Policy provides coverage not just for the type of negligence, but also various types of damages. The Court agrees with MUSIC in that the Lethal Weapons Exclusion defends against certain types of negligence as well as certain damages, including "bodily injury." *See Fouquet v. Daiquiris & Creams of Mandeville, LLC,* 49 So. 3d 44, 48 (La. Ct. App. 2010) ("[T]he exclusions bar coverage based not just on the type of negligence asserted, but more specifically, they deny coverage for 'bodily injury' stemming from the specified types of negligence.").

[5] Both the alleged false imprisonment—which occurred after and because of the first shooting—and the bodily injuries would depend on the same facts of Pogue being shot. *See State Farm Ins. Co. v. Bruns*, 942 A.2d at 1283 (holding that coverage was excluded for false imprisonment claim under New Hampshire law because the facts underlying the false imprisonment claim were "so dependent upon the facts of the sexual assaults, the claims [could] not be separated"); *see also Todd,* 547 N.W.2d at 699 (applying Minnesota law to hold that the claim of false imprisonment was inextricably linked with and part of the insured's overall plan to sexually assault a minor, and thus both the false imprisonment claim and sexual assault claim were excluded from coverage under the intentional bodily harm provision of the insured's homeowner's policy). Likewise, the case law cited by the insureds demonstrates that any claim for false imprisonment would be considered a part of the "same incident" as the shooting which resulted in bodily injury because the shooting necessarily resulted in Pogue's false imprisonment. *See First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 Fed. Appx. 784, 780 (11th Cir. 2008) (applying Florida law to determine that a false imprisonment claim was distinct from the assault and battery because "the pleadings depicted [the victim's] false imprisonment as a distinct, preceding incident that did not necessarily have to result in her assault and battery, even if that was the potential outcome.").

"Under Indiana law, an insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language." *Eli Lilly,* 482 N.E.2d at 470. If ambiguity exists, the insurance policy should be interpreted most favorably to the insured. *Id.* The Court must construe the insurance contract as a whole and "consider all of the provisions of the contract and not just individual words, phrases or paragraphs." *Briles v. Wausau Ins. Companies,* 858 N.E.2d 208, 213; *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 252 (Ind. 2005) ("When interpreting an insurance contract, courts must look at the contract as a whole."). Still, "the power to interpret contracts does not extend to changing their terms and we will not give insurance policies an unreasonable construction to provide additional coverage". *Id.*

The Limited Assault or Battery Coverage Provision provides limited coverage for "bodily injury" or "personal and advertising injury" that is "directly caused by an 'assault' or 'battery.'" (ECF No. 3-1 at 22). Pogue's position is that because the Lethal Weapons Exclusion bars claims for "bodily injury" or "personal and advertising injury," the exclusion bars claims for which the Limited Assault or Battery Provision expressly provides coverage. *See State Farm Mut. Auto. Ins. Co. v. Jakubowicz,* 56 N.E.3d 617 (Ind. 2016) (finding ambiguity in an insurance policy where the applicable provisions directly conflict with one another). Even still, Pogue fails to address the following clause from the Limited Assault or Battery Coverage Provision:

> Unless specifically modified or deleted in this endorsement, the terms, conditions, limitations and exclusions of the Commercial General Liability Coverage Part to which this endorsement is attached remain effective and apply to Limited Assault or Battery Coverage provided herein.

(ECF No. 3-1 at 22).

When "consider[ing] all the provisions of the contract[,]" this clause harmonizes the Policy's limited grant of coverage for assault or battery with the Lethal Weapons Exclusion. *See Briles,* 858 N.E.2d at 213; *See also Dunn,* 836 N.E.2d at 252 ("Courts should interpret a contract

12

so as to harmonize its provisions, rather than place them in conflict."). The Limited Assault or Battery Coverage Provision expressly states that the "exclusions of the Commercial General Liability Coverage…apply to Limited Assault or Battery Coverage provided herein." (ECF. No 3-1 at 22). Accordingly, although the Policy does provide limited coverage for assaults and batteries committed with a weapon, the scope of that coverage is narrowed through the Lethal Weapons Exclusion. There is no coverage for "bodily injury" or "personal and advertising injury" resulting from the "use or threatened use of a…firearm." (ECF No. 3-1 at 14). It appears Pogue urges the Court to focus on individual clauses and words in isolation, but that is not the inquiry that Indiana law demands.[6] Rather, viewing the Policy as whole, there is no ambiguity and Pogue's contentions must fail.

It is undisputed that Pogue seeks recovery for bodily injuries resulting from Suggs' use of a firearm. Indeed, the Policy would cover Pogue's injuries *but for* the Lethal Weapons Exclusion. But here the parties to the insurance contract—which Pogue was not—agreed to limit the risk covered under the Policy by adding certain exclusionary endorsements. The purpose of the Lethal Weapons Exclusion is to eliminate coverage for bodily injuries under the Policy if those injuries arise from the use of a lethal weapon. The cause of action—whether negligence or false imprisonment—and Pogue's damages resulted from Suggs' use of a firearm. Thus, coverage for the insureds is expressly excluded under the Lethal Weapons Exclusion which applies to the entire CGL policy including the Limited Assault or Battery Coverage Provision.

---

[6] Pogue also argues that the terms "weapon"—contained in the Limited Assault or Battery Coverage Provision—and "lethal weapon"—contained in the Lethal Weapons Exclusion—create ambiguity because their definitions "overlap in the sense that both encompass a firearm used to injure or kill someone." (ECF No. 18 at 9). The terms are "not ambiguous simply because [they] are undefined." *OmniSource Corp. v. NCM Americas, Inc.*, 313 F. Supp. 2d 880, 891 (N.D. Ind. 2004) (citing *Smith v. Allstate Ins. Co.,* 681 N.E.2d 220, 223 (Ind.Ct.App.1997)). Indeed, the fact that the term "weapon," a more-inclusive term, overlaps with the definition of "lethal weapon" to exclude coverage does not create ambiguity. This is all the more true because "lethal" is a modifier for "weapon" in the context of the Lethal Weapons Exclusion and limits the more-inclusive term "weapon" in the Limited Assault or Battery Coverage Provision's grant of coverage.

## IV. Conclusion

The Court finds that the Policy is clear and unambiguous. Further, as applied to the underlying dispute, there is no coverage for Pogue's claims under the Policy's plain meaning. For these reasons, Defendant MUSIC's Motion to Dismiss for failure to state a claim is GRANTED. SO ORDERED.

August 28, 2023

                                          s/ *Holly A. Brady*
                                          CHIEF JUDGE HOLLY A. BRADY
                                          UNITED STATES DISTRICT COURT